Case 3:16-cv-00089 Document 16 Filed in TXSD on 07/11/16 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| FIDEL LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-0089 |
| | § | |
| UNITED PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER DENYING MOTION TO REMAND AND DISMISSING CLAIMS AGAINST DEFENDANT AGUILAR

This lawsuit was filed by Fidel Lopez on March 4, 2016, in the 39th Judicial District Court of Brazoria County, Texas. Lopez alleged that his home sustained water damage in October 2015, and that his insurance company, United Property & Casualty Insurance Company ("UPC"), failed to fully cover the damage. Lopez therefore sued UPC as well as the insurance adjuster assigned to his claim, Bibiana Aguilar ("Aguilar"). Lopez's state court pleading asserts claims of "fraud, breach of contract, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA." He alleges that he is owed over $100,000.

Lopez's pleading alleges that Aguilar is a resident of Texas, and that "UPC assigned or hired Aguilar to adjust the claim locally." Lopez further alleges that Aguilar was UPC's "agent," and that she (1) "initially agreed with Plaintiff's public adjuster that she would authorize payment for the damaged carpet in the guestroom and master bedroom, but ultimately did not follow through" and that she then (2) "proceeded to

accuse Plaintiff's public adjuster of intentionally tearing out carpet in Plaintiff's home." He also alleges that "Defendants failed to assess the claim thoroughly," and that the actions of UPC and Aguilar amount to a "grossly unreasonable, intentional, and reckless failure to investigate and adjust the claim properly."  Accordingly, Lopez asserts that Aguilar violated several provisions of sections 541 and 542 of the Texas Insurance Code, as well as the Texas Deceptive Trade Practices Act. Lopez seeks actual damages, exemplary damages, and attorney's fees.

UPC removed the suit to this Court on the basis of diversity jurisdiction.  Lopez has filed a motion asking this Court to "abstain and remand," contending that this Court lacks jurisdiction because Aguilar is a resident of Texas.  Dkt. 6.  UPC has responded to Lopez's motion to remand by contending that Aguilar's citizenship should not be considered because she was improperly joined as a defendant.  Similarly, Aguilar has also filed a motion to dismiss the claims against her.  Dkt. 12.

## APPLICABLE LAW

The Court first turns to Lopez's motion to remand.  Generally, under 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court civil action over which the federal court would have "original jurisdiction." *See Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  Federal courts have "original jurisdiction" over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).  However, such diversity jurisdiction requires *complete* diversity—that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *See,*

*e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, No. 14-20552, 2016 WL 1274030, at *2 (5th Cir. Mar. 31, 2016) ("The only caveat is that, when a properly joined defendant is a resident of the same state as the plaintiff, removal is improper.").

To determine whether removal of this case was proper, the Court looks to the plaintiff's state court pleadings at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995). The removing party bears the burden of showing that subject matter jurisdiction exists and that the removal procedure was properly followed. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Ambiguities or doubts are to be construed against removal and in favor of remand. *Id.*; *see also Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.")

UPC contends that Lopez has improperly joined Aguilar and that Aguilar's citizenship should therefore be ignored. The doctrine of improper joinder ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity. *Borden v. Allstate*, 589 F.3d 168, 171 (5th Cir. 2009). In essence, the court may ignore an improperly joined, non-diverse defendant when determining its subject-matter jurisdiction. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d

568, 572 (5th Cir. 2004) (en banc), cert. denied, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005).

Thus, the issue at hand is whether Aguilar has been improperly joined. A non-diverse defendant may be found to be "improperly joined" if either (1) there is "actual fraud in the [plaintiff's] pleading of jurisdictional facts" or (2) the removing defendant demonstrates that the plaintiff cannot establish a cause of action against the non-diverse defendant. *Mumfrey v. CVS Pharm. Inc.*, 719 F.3d 392, 401 (5th Cir. 2013). Only the second type of improper joinder is at issue here. Accordingly, the Court must determine "whether [UPC] has demonstrated that there is no possibility of recovery by [Lopez] against [Aguilar], which stated differently means that there is no reasonable basis for the district court to predict that [Lopez] might be able to recover against [Aguilar]." *Smallwood*, 385 F.3d at 573; *see also Mastronardi v. Wells Fargo Bank, et al.*, No. 15-11028, 2016 WL 3549007, at *1 (5th Cir. June 29, 2016) (citing *Smallwood*).

In determining whether Lopez "might" recover against Aguilar, this Court may "conduct a Rule 12(b)(6)–type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.*[1] "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge,

---

[1] In *Smallwood*, the Fifth Circuit noted that there is a second, alternative, method by which to predict "whether the plaintiff has a reasonable basis of recovery under state law . . . there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." 385 F.3d at 573. This is not such an instance. *See, e.g., Smallwood*, 385 F.3d at 573–74 n.12 (providing examples of "discrete and undisputed facts" appropriate for summary inquiry: "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a

there is no improper joinder." *Id*. At this stage, the Court "do[es] not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). If there is "a reasonable basis of recovery on one cause of action, the court must remand the entire suit to state court." *Edwea, Inc. v. Allstate Ins. Co.*, No. H–102970, 2010 WL 5099607, at *2 (S.D. Tex. Dec. 8, 2010). In some cases, a further summary inquiry is appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*.

The Fifth Circuit has recently held that the sufficiency of a plaintiff's state-court petition for purposes of a removal and improper joinder analysis should be measured under federal court pleading standards. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016); *see also Mastronardi*, 2016 WL 3549007 at *1 (noting that the revised Texas standard of pleading "now tracks the federal standard."). Accordingly, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc*., 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual

---

prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true").

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id*. at 679.

## ANALYSIS

Although Lopez's state court pleading spans 16 pages, his allegations against Aguilar are fairly sparse. In particular, Lopez alleges that Aguilar "engages in the business of adjusting insurance claims in the State of Texas," that UPC hired Aguilar to adjust his claim, and that Aguilar acted as UPC's agent in conducting a substandard inspection and adjustment of his property claim that resulted in her finding that there was only $17,035.43 in covered damages—far less than the $117,534.74 that Lopez alleges as the actual amount of covered damages. Lopez also alleges that Aguilar "initially agreed with Plaintiff's public adjuster" on certain unspecified claim issues, "but ultimately did not follow through" on this so-called agreement, and she instead "accuse[d] Plaintiff's public adjuster of intentionally tearing out carpet in Plaintiff's home." He specifically asserts that Aguilar's conduct violated sections 541.060(a)(2)(A), 541.060(a)(3),

541.060(a)(4), 542.003(3) and 542.003(4)[2] of the Texas Insurance Code, as well as sections 17.46(b)(2), (5), and (7) of the Texas Deceptive Trade Practices Act, and that her actions were "unconscionable" and were committed "knowingly" and "intentionally."

As other courts have noted, "[t]he joinder of a local claims adjuster in a [Texas] state court action against a non-citizen insurance company in an attempt to avoid federal court jurisdiction apparently has become a popular tactic." *Gonzalez v. State Farm Lloyds*, 4:15-CV-305-A, 2015 WL 3408106, at *3 (N.D. Tex. May 27, 2015). While it is true that Texas law may permit adjusters to be found individually liable for certain violations of the Texas Insurance Code, "for an adjuster to be held individually liable, they have to have committed some act that is prohibited by the section, not just be connected to an insurance company's denial of coverage." *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) (internal citations omitted).

### A. Claims under the Texas Insurance Code

Section 541.060(a)(2)(A) of the Texas Insurance Code prohibits, as an "unfair settlement practices with respect to a claim by an insured or beneficiary," a failure "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." TEX. INS. CODE § 541.060(a)(2)(A). The majority of federal courts that have addressed this provision have found that this section applies only to insurers, and that it does not apply to adjusters. *See, e.g., Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.*, 3:15-CV-

---

[2] Because no such statutory provisions exist, the Court will broadly construe Lopez's pleading as an attempt to allege that Aguilar has violated section 542.003(*b*)(3) and (*b*)(4) of the Texas Insurance Code.

3741-D, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016) ("Massey and Cagle are both adjusters, and "[a]n adjuster 'cannot be held liable under this section because, as an adjuster, he does not have settlement authority on behalf of the insurer.'") (quoting *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F.Supp.3d 721, 724 (N.D. Tex. 2014)); *but see Roach v. Vehicle*, No. 3:15-CV-3228-G, 2016 WL 795967, at *5 (N.D. Tex. Feb. 29, 2016) (finding adjusters may be liable under §541.060(a)(2) because "the insurance adjuster, as the person primarily responsible for investigating and evaluating insurance claims, has the ability to affect or bring about the 'prompt, fair, and equitable settlement' of claims, because it is upon his investigation that the insurance company's settlement of a claim is generally based.").

After reviewing the cases cited by the parties, as well as Texas case law interpreting the Texas Insurance Code, the Court finds that this section does not apply to Lopez's allegations against Aguilar in this case. *See, e.g., Doss v. Warranty Underwriters Ins. Co.,* 04-11-00776-CV, 2012 WL 5874316, at *2 (Tex. App.—San Antonio Nov. 21, 2012, no pet.) (noting that provisions such as § 541.060(a)(2)(A) apply "only to the insurer-insured relationship"); *Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.,* 05-14-01491-CV, 2016 WL 1242480, at *10 (Tex. App.—Dallas Mar. 30, 2016, no. pet. h.).

Next, sections 541.060(a)(3) and (a)(4) of the Texas Insurance Code also prohibit "unfair settlement practices with respect to a claim by an insured or beneficiary," such as "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer

of a compromise settlement of a claim," and "failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or (B) submit a reservation of rights to a policyholder." Again, other federal courts have held that these sections are not applicable to adjusters. *See, e.g., Mainali Corp. v. Covington Specialty Ins. Co.*, 3:15-CV-1087-D, 2015 WL 5098047, at *4 (N.D. Tex. Aug. 31, 2015) ("[A]n adjuster cannot be held liable under § 541.060(a)(3) because an adjuster has no obligation to provide a policyholder a reasonable explanation of the basis in the policy for the insurer's denial of a claim, or offer of a compromise settlement of a claim."); *One Way Investments, Inc. v. Century Sur. Co.*, 3:14-CV-2839-D, 2014 WL 6991277, at *5 (N.D. Tex. Dec. 11, 2014) ("[A]n adjuster cannot be held liable under [§ 541.060(a)(4)(A)] because an adjuster does not have authority on behalf of the insurer to affirm or deny coverage of a claim to a policyholder."). Additionally, the Court notes that these particular provisions are aimed at the timeliness of communications to an insured. But none of Lopez's allegations against Aguilar assert that she was untimely or slow to act. Instead, he complains that her investigation was "substandard." In contrast, Lopez does make a specific allegation that UPC itself engaged in "delay" tactics and that it failed to provide a prompt explanation for failing to fully settle his claim.

    Similarly, section 542.003(b)(3) and (b)(4) prohibit "an insurer engaging in business in this state" from "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies," and "not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear." TEX. INS. CODE ANN. § 542.003. Lopez

alleges that Aguilar violated these provisions when she "knowingly underestimated the amount of damage" to his home. However, at least one Texas Court of Appeals has held that this section applies only to insurers and not to adjusters. *See Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co.,* 05-14-01491-CV, 2016 WL 1242480, at *10 (Tex. App.—Dallas Mar. 30, 2016, no. pet. h.) ("Greenhaw's motion for summary judgment asserted he did not violate section 542.003 because that section regulates the actions of insurers only and not adjusters. We agree. . . . We conclude Greenhaw established as a matter of law that he did not violate chapter 542."). Federal courts have held the same. *See, e.g., Mainali Corp. v. Covington Specialty Ins. Co.*, 3:15-CV-1087-D, 2015 WL 5098047, at *6 (N.D. Tex. Aug. 31, 2015) ("Chapter 542 only applies to specifically listed 'insurers,' and Summers, an adjuster, is not an insurer.").

### B. Claims under the Texas Deceptive Trade Practices Act

Finally, the Court turns to Lopez's allegations that Aguilar violated the Texas Deceptive Trade Practices Act. Lopez alleges that Aguilar violated section 17.46(b)(2), (5) and (7) by failing "to give Plaintiff the benefit of the doubt," failing to "write up an estimate reflecting the proper repair of Plaintiff's Property," representing that the policy and her adjusting and investigative services had characteristics or benefits that they did not possess or were of a particular standard, quality or grade, when they were of another, and that Aguilar's actions were unconscionable.

The DTPA, in relevant part, prohibits "false, misleading, or deceptive acts or practices" such as "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "representing that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ;" and "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." TEX. BUS. & COM. CODE ANN. § 17.46.

In federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Omni USA, Inc. v. Parker–Hannifin Corp.*, 798 F.Supp.2d 831, 836 (S.D. Tex. 2011); *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009) (applying Rule 9(b) to claims under the DTPA and Chapter 541 of the Texas Insurance Code). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015) (citation omitted). In other words, a plaintiff must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

In this case, Lopez alleges that Aguilar's evaluation of the damage to his home was grossly unreasonable and inadequate, but he does not point to any specific statements that would satisfy Rule 9(b)'s requirements and allow this Court to find that he has adequately alleged a claim against Aguilar. *See, e.g., Columbia Mut. Ins. Co. v. Cedar Rock Lodge, LLC*, 1:15-CV-111-P-BL, 2016 WL 1073051, at *4 (N.D. Tex. Feb. 3, 2016), *report and recommendation adopted,* 1:15-CV-0111-P-BL, 2016 WL 1059677

(N.D. Tex. Mar. 17, 2016) (noting that "Cedar Rock fails to include any facts regarding time, place, and content of any false representation during Columbia's attempt to effectuate settlement of the insurance claim. Moreover, Cedar Rock does not allege that French–or any other agent of Columbia–made a false misrepresentation when handling this insurance claim. Instead, Cedar Rock relies on the substantial disparity between French's damage estimate and Forensic Building Science's damage estimate–a difference of $485,871.94–to infer that Columbia did not make a good faith effort to settle Cedar Rock's claim. This evidence will not suffice. Fraud claims, like this violation of the [Texas Insurance Code], must be pleaded with particularity.").

## CONCLUSION

Based upon the foregoing, the Court finds that UPC has demonstrated that Aguilar has been improperly joined as a defendant in this case.

Accordingly, and for the foregoing reasons; **IT IS ORDERED** that Plaintiff's "First Amended Motion to Abstain and Remand" Dkt. 6, is **DENIED**; and **IT IS FURTHER ORDERED** that Aguilar's Motion to Dismiss Dkt. 12 is **DISMISSED for lack of jurisdiction**;[3] and **IT IS FURTHER ORDERED** that Lopez's claims against the non-diverse defendant Bibiana Aguilar are **DISMISSED, without prejudice**.

SIGNED at Galveston, Texas, this 11th day of July, 2016.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge

---

[3] A dismissal with prejudice would be a determination "on the merits" and would require subject matter jurisdiction. *See Cox, Cox, Camel & Wilson, LLC v. Sasol N. Am., Inc.*, 544 Fed. App'x. 455 (5th Cir. 2013). The Court lacks subject matter jurisdiction over the claims between Plaintiff and Aguilar because they are not completely diverse in citizenship. *See also Ave. Musicians & Artists, LLC v. Hudson Specialty Ins. Co.*, No. CV 16-3124, 2016 WL 3167716, at *2 (E.D. La. June 7, 2016).